# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIESHA HINES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20-cv-05202 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| LAKE COUNTY, ILLINOIS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tiesha Hines had recently undergone an emergency Cesarean-section (or "C-section") and given birth to a premature baby when she appeared at a probation hearing in Lake County, Illinois. At the conclusion of the hearing, she was taken into custody. Hines claims that a courtroom officer then handcuffed her and, despite knowing about her recent C-section, shoved her front-forward against a wall. Hines further claims that while she was in custody, she began bleeding from her C-section incision but received delayed and insufficient treatment. Moreover, she alleges that her requests to have her breast milk delivered to her premature baby in the neonatal intensive care unit ("NICU") were denied. Hines has now brought the present lawsuit against Defendants Lake County, the Division of Adult Probation Services of Lake County, and the Sheriff of Lake County (together, "Lake County Defendants"), along with two unidentified John and Jane Doe Defendants. (Compl., Dkt. No. 1.) She asserts claims under 42 U.S.C. § 1983 for violations of her constitutional rights to due process and equal protection of the laws and for deliberate indifference to her serious medical needs, and under Illinois state law for intentional infliction of emotional distress ("IIED"). Lake County Defendants ask this Court to dismiss

Hines's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 11.) For the reasons that follow, Lake County Defendants' motion is granted in part and denied in part.

## BACKGROUND

For purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Hines as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

As alleged in the complaint, Hines is an African-American woman with a disability.[1] (Compl. ¶ 9.) She claims that, approximately 29 weeks into a high-risk pregnancy, she underwent an emergency C-section on August 28, 2019 and gave birth to a son. (*Id.* ¶¶ 10, 14.) Her son was born prematurely at a time in his prenatal development when a baby's lungs, brain, and muscles typically are just beginning to develop and mature. (*Id.* ¶ 15.) He weighed about 800 grams at birth. (*Id.*) When Hines was discharged from the hospital three days later, her son remained in the hospital's NICU. (*Id.* ¶¶ 16, 18, 29.)

On September 3, 2019, Hines appeared for a hearing regarding her probation status at the Lake County circuit court. (*Id.* ¶¶ 3, 17.) She alleges that Defendant Division of Adult Probation Services of Lake County, a division of the Lake County circuit court, was aware of her pregnancy and disability. (*Id.* ¶¶ 3, 11–12.) In addition, at the hearing, Hines's public defender informed the judge that Hines had recently undergone an emergency C-section and that her premature baby was still in the NICU. (*Id.* ¶ 18.) During the hearing, Hines was crying and in pain from her C-section incision. (*Id.* ¶ 21.) Nonetheless, she was ordered to be taken into custody for violating her probation. (*Id.* ¶ 20.) According to Hines, despite her visible pain, a courtroom officer (named in the operative complaint as a John Doe Defendant) cuffed Hines's hands behind her back and

---

[1] Hines's complaint does not specify the nature of her disability.

pushed her against a wall, front-forward. (*Id.* ¶¶ 5, 22.) Hines responded by telling the courtroom officer that she had just had a C-section and asking him to "take it easy." (*Id.* ¶ 23.)

Hines further alleges that, once in custody, she began bleeding from her C-section incision. (*Id.* ¶ 25.) She claims that she asked multiple employees at the jail, including a police sergeant named in the operative complaint as a Jane Doe Defendant, for medical attention for the bleeding and pain she was enduring. (*Id.* ¶ 26.) Yet she was provided only with a sanitary napkin and was not seen by a nurse until the following day. (*Id.* ¶ 27.) When Hines did see a nurse, she was denied the pain medication prescribed for her following her C-section and instead given only a prenatal vitamin. (*Id.* ¶¶ 21, 28.) In addition, before being taken into custody, Hines had been breastfeeding her son as advised by his medical providers. (*Id.* ¶ 33.) Hines alleges that she informed jail staff of this fact and requested that they arrange to have her breast milk collected and delivered to her son. (*Id.* ¶ 34.) However, her request was denied. (*Id.* ¶ 35.) Instead, according to Hines, she was forced to "pump and dump" her breast milk—*i.e.*, she was forced to pump and throw away her breast milk. (*Id.* ¶ 36.) As a result of her treatment in custody, Hines claims that she experienced prolonged pain and suffering and mental anguish, and her son was deprived of the nutrition he would have received from her breast milk. (*Id.* ¶ 37.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In this case, Hines asserts three § 1983 claims, alleging that Defendants violated her constitutional rights to due process (Count I) and equal protection of the laws (Count III), and that they were deliberately indifferent to her serious medical needs (Count II). She also brings a state-law IIED claim (Count IV). Because two Defendants named in the operative complaint are unidentified John and Jane Doe Defendants and have not been served, the present motion is brought only by Lake County Defendants seeking dismissal of all four counts against them.

I. **Due Process**

In Count I, Hines claims that Defendants' refusal to arrange for the delivery of her breast milk to her son in the NICU violated her right to due process under the Fourteenth Amendment to the United States Constitution. While the complaint is unclear as to the precise nature of her due process claim, Hines has clarified that she believes Defendants infringed on her fundamental right to breastfeed her child. Thus, the Court construes her claim as arising under the due process clause's substantive component.

To state a substantive due process claim, "[a] plaintiff must allege that the government violated a fundamental right or liberty" and that the violation was arbitrary and irrational. *Campos v. Cook County.*, 932 F.3d 972, 975 (7th Cir. 2019). Here, Hines contends that she has a fundamental right to breastfeed her child. Lake County Defendants respond that even if Hines's substantive due process claim implicates a fundamental right, she has failed to plead that they maintained any policy, practice, or custom, as required under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). As the Court agrees that Hines has failed to plead sufficient facts to support a *Monell* theory, it need not reach the question of whether the right to breastfeed her

4

child is a fundamental right and declines to do so as the John and Jane Doe Defendants who committed the alleged violative acts have not yet appeared.

Because Lake County Defendants are municipal entities, they cannot be held liable under § 1983 for the constitutional violations of their employees based on a *respondeat superior* theory. *Id.* at 691. Instead, a municipality may be held liable for the unconstitutional acts of its employee only if the employee causes an injury in the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id*. at 694. Municipal liability under § 1983 may be established

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final policymaking authority."

*Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). To plead municipal liability successfully, a plaintiff must allege more than "the legal elements of the various claims . . . asserted;" instead, she must set forth factual allegations that contribute to the plausibility of the *Monell* claims. *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011).

Hines's complaint alleges that the Jane Doe Defendant's conduct in forcing Hines to pump and dump her breast milk rather than delivering it to her newborn son "is part of a discriminatory pattern, practice and/or policy." (Compl. ¶¶ 40, 42.) That allegation simply tracks the elements of a *Monell* claim and is not entitled to the presumption of truth. *McCauley*, 671 F.3d at 618. The complaint otherwise contains no allegations of any policy maintained by Lake County Defendants concerning prisoners' ability to breastfeed their children. Nor does the complaint contain allegations from which it can be inferred that Lake County Defendants maintained a custom of preventing prisoners from breastfeeding their children. For a court to reasonably infer that a

practice is a government custom, a plaintiff must allege facts that "demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). But Hines's own experience is the only incident alleged in the complaint that relates to Lake County Defendants' treatment of breastfeeding prisoners. That is insufficient to state a *Monell* claim. *See, e.g.*, *Thomas v. Cook County. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance." (internal quotation marks omitted)); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event." (internal quotation marks omitted)). For that reason, the substantive due process claim against Lake County Defendants is dismissed without prejudice.

## II. Deliberate Indifference

Hines claims in Count III that after she was taken into custody, she experienced bleeding around her C-section incision along with the pain she was already experiencing from the procedure, yet she had to wait until the next day before she could see a nurse as requested. In the meantime, according to Hines, she was simply provided with a sanitary napkin. And when she did see a nurse, she received no treatment for her pain. Hines claims that this delayed and inappropriate care evidenced deliberate indifference to her serious medical needs in violation of her Eighth Amendment rights.

"The Eighth Amendment's prohibition on cruel and unusual punishment requires governments not to act with deliberate indifference to serious threats to prisoners' health and

6

safety." *Daniel v. Cook County*, 833 F.3d 728, 733 (7th Cir. 2016). A deliberate indifference claim requires a plaintiff to allege that she suffered from an "(1) an objectively serious medical condition to which (2) a [prison] official was deliberately, that is subjectively, indifferent." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009). Since Lake County Defendants do not deny that Hines had an objectively serious medical condition, the Court focuses on the subjective component of Hines's claim. "The subjective component of a deliberate indifference claim requires that the prison official knew of a substantial risk of harm to the inmate and disregarded the risk." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Conduct that amounts only to medical malpractice will not suffice. *Id.* Still, a prison official must provide "medical care that is adequate in light of the severity of the condition and professional norms." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021).

Hines claims that she informed jail staff that she was recovering from a recent C-section and that she was experiencing pain and bleeding around the incision. Thus, as alleged, prison officials were made aware of Hines's condition but nonetheless failed to promptly arrange a visit with a nurse. Such a delay in treating Hines's painful but not life-threatening medical condition can support a deliberate indifference claim. *Rodriguez*, 577 F.3d at 829. When Hines finally was able to see a nurse the next day, she was denied the medication that her doctors had prescribed for her pain from the C-section. Allegations that a prison nurse refused to provide a prisoner with her prescribed pain medication sufficiently evidences deliberate indifference. *See, e.g.*, *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("Allegations of refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can . . . state an Eighth Amendment claim."); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (holding that a prisoner's

7

deliberate indifference claim survived summary judgment where the evidence showed that a prison nurse denied him pain medication prescribed by his treating physician).

Lake County Defendants nonetheless contend that Hines's allegations demonstrate that she did actually receive medical treatment because she was provided with a sanitary napkin and a prenatal vitamin. However, a plaintiff's "receipt of *some* medical care does not automatically defeat a claim of deliberate indifference." *Edwards*, 478 F.3d at 831. Rather, "[d]eliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers blatantly inappropriate medical treatment." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). While Lake County Defendants assert that Hines's allegations show that prison officials took affirmative steps to treat her condition, they do not explain how the treatment she received was appropriate for her condition. To the contrary, the Court finds it more than plausible that the treatment Hines describes in her complaint was "blatantly inappropriate." First, Hines was provided with a sanitary napkin, a product that a jury could find patently unsuited to treat bleeding from the C-section incisions on her abdomen. Then, she was provided with a prenatal vitamin that would do nothing to alleviate her pain. If ultimately supported by the evidence, a jury could very well find such treatment akin to a prison official who, "knowing a patient faces a serious risk of appendicitis[,] . . . gives the patient an aspirin and sends him back to his cell," which the Seventh Circuit has cited as an example of blatantly inappropriate treatment giving rise to a deliberate indifference claim. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016).

Still, to pursue a claim against Lake County Defendants' for its employees' deliberate indifference, Hines must also allege that her injury was the result of their policy, practice, or custom. In her complaint, Hines claims that Lake County Defendants maintain "polices and procedures that neglect and/or discourage the medical care and treatment of individuals within

their custody." (Compl. ¶ 48.) As an example, she cites the experience of her son's father, whose complaints of stomach pain while in custody in Lake County were ignored. (*Id.* ¶ 49.) It turned out his pain was caused by a ruptured ulcer that required emergency surgery. (*Id.*) Similarly, Hines alleges that when her son's grandfather was in custody in Lake County, he complained of medical issues but was neglected. (*Id.* ¶ 50.) Because he did not receive timely treatment, he had to undergo surgery. (*Id.*) These allegations, and Hines's own experience, are sufficient to plead that Lake County Defendants have a custom of ignoring prisoners' complaints of pain. *See, e.g.*, *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir 2006) (stating that a plaintiff can prove a widespread custom or practice with "competent evidence tending to show a general pattern of repeated behavior (*i.e.*, something greater than a mere isolated event)"); *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *6 (N.D. Ill. June 29, 2013) ("[The plaintiff's] allegations of routine delays and denials of medical care and nonresponsiveness to requests for care, combined with the more specific factual allegations of how he was dealt with . . . are sufficient to state claims under *Monell* . . . ."). Hines's deliberate indifference claim against Lake County Defendants under *Monell* thus survives the motion to dismiss.

### III. Equal Protection

In Count II, Hines contends that the John Doe Defendant discriminated against her because of her race when he shoved her against a wall at the probation hearing, thereby violating her equal protection rights under the Fourteenth Amendment. Further, she claims that the John Doe Defendant's conduct was part of Lake County Defendants' pattern or practice of treating African Americans worse than whites. To state an equal protection claim against Lake County Defendants, Hines must plead factual content supporting the reasonable inference that they

9

maintained a policy, practice, or custom of intentional discrimination against African Americans. *McCauley*, 671 F.3d at 616.

Again, Hines attempts to support her *Monell* claim by pleading a widespread custom or practice. But to do so, she only alleges facts regarding her own experience and her personal observation of "Caucasian women who have been accused of the same or similar offenses as Hines being treated better than Hines during court proceedings in Lake County." (Compl. ¶ 57.) These allegations do not plausibly suggest that the John Doe Defendant's conduct was anything more than an isolated incident of misconduct. *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) ("[A] single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct."); *see also Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) ("[I]solated events that adversely affect individuals are not presumed to be a violation of the equal protection clause." (internal quotation marks omitted)). And Hines's vague allegation of seeing white women being treated better during court proceedings in Lake County is insufficiently detailed to salvage her *Monell* claim. *E.g.*, *Springs v. Schwarz*, No. 15 C 5437, 2017 WL 4130504, at *3 (N.D. Ill. Sept. 19, 2017) ("Allegations that are vague, broad, and lacking sufficient detail to put the defendant on notice are insufficient to support a *Monell* claim."); *Arita v. Wexford Health Sources, Inc.*, No. 15-cv-01173, 2016 WL 6432578, at *2 (N.D. Ill. Oct. 31, 2016) ("[The plaintiff's] single conclusory allegation that [the defendant] has policy of treating other inmates in the same fashion as he has been treated is insufficient to survive a motion to dismiss."). Consequently, Hines has failed to state a *Monell* equal protection claim against Lake County Defendants.

## IV. IIED

Finally, in Count IV, Hines asserts an IIED claim alleging that Lake County Defendants' conduct was extreme and outrageous. Her IIED claim appears to be based on both the incident where the John Doe Defendant shoved her against the wall at the probation hearing and Defendants' deliberate indifference to her serious medical needs. Unlike with the § 1983 claims, Lake County Defendants may be held liable for their agents' IIED under a *respondeat superior* theory. *See Adames v. Sheahan*, 909 N.E.2d 742, 754 (Ill. 2009) ("Pursuant to the theory of *respondeat superior*, an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment.").

In Illinois, an IIED claim requires a plaintiff to allege: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). Lake County Defendants argue that Hines has failed to plead extreme and outrageous conduct on the part of any Defendant. To plead "extreme and outrageous" conduct, the alleged conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Id.*

The Court finds that Hines's allegations concerning Defendants' deliberate indifference to her serious medical needs are also sufficient to support her IIED claim. Indeed, it is not unusual for courts to find that allegations of deliberate indifference also suffice to plead IIED. *E.g.*, *Banks v. Wexford Health Sources, Inc.*, No. 18 C 50282, 2020 WL 1139265, at *5 (N.D. Ill. Mar. 9, 2020); *Piercy v. Whiteside County*, No. 14 CV 7398, 2016 WL 1719802, at *8 (N.D. Ill. Apr. 29, 2016); *Rice v. Wexford Health Servs., Inc.*, No. 14 C 4978, 2016 WL 8711490, at *6 (N.D. Ill.

Jan. 29, 2016). Here, Defendants' alleged conduct in offering a post-C-section inmate a sanitary napkin and a prenatal vitamin may plausibly be considered extreme and outrageous. Further, the John Doe Defendant's alleged conduct in shoving a non-resisting woman he knew to be recovering from a serious surgery against a wall also meets the extreme and outrageous standard. That is particularly true given that John Doe allegedly shoved Hines front forward, presumably causing her fresh incisions to make contact with the wall. And Hines has also alleged that one nearby court employee appeared disturbed by the conduct. (Compl. ¶ 24.) Together, these allegations sufficiently plead that the John Doe Defendant's conduct at the probation hearing was extreme and outrageous. *See Kolegas*, 607 N.E.2d at 211 ("Behavior that might otherwise be considered merely rude, abrasive or considerate, may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional distress.").

## CONCLUSION

For the foregoing reasons, Lake County Defendants' motion to dismiss (Dkt. No. 11) is granted in part and denied in part. The equal protection and substantive due process claims against Lake County Defendants are dismissed without prejudice. Hines will, however, be permitted to pursue her deliberate indifference and IIED claims as to Lake County Defendants.

ENTERED:

Dated: June 26, 2021

_____
Andrea R. Wood
United States District Judge